## WAYLAND et al., Respondents, v. JOHNSON, Appellant.

### St. Louis Court of Appeals, March 3, 1908.

1. **CONTRACTS: Joint Contract: Parties Plaintiff: Prima-Facie Case.** In an action for breach of contract whereby the plaintiffs, three in number, were to haul and saw into lumber the timber upon the defendant's land, which contract it is alleged the defendant violated by refusing to allow the plaintiffs to go upon his land and perform the contract, the evidence is examined and held sufficient to justify a finding that the contract was binding on all three of the plaintiffs, although there was an understanding that one of them was to haul the timber and the other two were to saw it, a specified sum to be paid for each service.

2. ———: **Proof of Contract: Sawing Timber.** In an action on a contract, evidence that the defendant employed the plaintiffs to haul and saw such of the defendant's trees as were large enough for lumber on seven hundred acres of land at $7 per thousand feet, was sufficient to show a definite contract which would support the action.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,* Judge.

AFFIRMED.

*Green & Green* and *Orr & Luster* for appellant.

(1)   Plaintiffs have failed to prove the contract alleged in their petition, viz.: one contract with the three plaintiffs jointly to haul logs and saw them into lumber at $7 per thousand feet. Under the pleadings and evidence plaintiffs were not entitled to recover, and the court should so have instructed the jury on defendant's motion. 9 Cyc., 704; Clements v. Yeates, 69 Mo.

625; Wonderly v. Christian, 91 Mo. App. 158; Schneider v. Patton, 175 Mo. 723; Chitty v. Railroad, 148 Mo. 64; Construction Co. v. Iron Works, 169 Mo. 154; Thieman v. Goodnight, 17 Mo. App. 435; Cole v. Armour, 154 Mo. 351; Deyerle & Porter v. Hunt & Hunt, 50 Mo. App. 542; Johnson v. Bank, 102 Mo. App. 399; Megher v. Stewart, 6 Mo. App. 498; Timber Co. v. Railroad, 180 Mo. 420. (2) The evidence shows that there were negotiations for two separate contracts, one with defendant and R. V. Wayland for hauling logs, and another with defendant and the sawmill partners, A. B. Wayland and J. H. Fry, for sawing the logs into lumber, but these negotiations never reached the point of an actual agreement between the parties. But even if there was an expressed intention on both sides to agree to the hauling and sawing, yet as a contract this agreement under the evidence would be void for want of mutuality and uninforcible on account of its indefiniteness, and for these reasons the court should have instructed the jury to find for the defendant. Steffen v. Railway, 156 Mo. 334; Price v. Atkinson, 94 S. W. 817; Watson v. Gross, 87 S. W. 104; Campbell v. Handle Co., 94 S. W. 815; Dennis v. Slyford, 117 Fed. 474; Trans. Co. v. Bolt and Nut Co., 114 Fed. 77; Rankin v. Mitchem, 53 S. E. 854; Harrison & Garrett v. Lumber Co., 45 S. E. 730.

*J. N. Burroughs* for respondents.

(1) The contract sued on here is a joint contract, and there was no misjoinder of parties plaintiff. 9 Cyc., pp. 663, 664; Slaughter v. Davenport, 151 Mo. 26; Wolff v. Ward, 104 Mo. 127; Clark v. Cable, 21 Mo. 223. (2) The evidence in this cause shows a definite, certain and mutual contract between the plaintiffs and the defendant. The following cases are in point: Hammond v. Beeson, 112 Mo. 190; Brandt v. Schuchmann, 60 Mo. App. 70.

GOODE, J.—This is an action on a contract by which, as plaintiffs allege, they agreed to move a sawmill, engine and teams and wagons from Clark county to defendant's farm in Howell county, on an understanding with defendant they should cut into lumber the timber standing on seven hundred acres of land belonging to him; that it was part of said agreement defendant should have the trees cut into logs, and plaintiffs should haul the logs to their mill, and be paid for the hauling twenty cents a hundred feet or two dollars a thousand, should saw the logs into lumber and be paid for the sawing fifty cents a hundred feet or five dollars a thousand, making a total compensation to plaintiffs for the two services of hauling and sawing of seven dollars a thousand feet. After stating the contract, the petition alleges plaintiff removed their mill, wagons and teams from Clark county to Howell county, according to the stipulated terms and at an expense of five hundred dollars; that the timber it was agreed they should cut would have yielded about one million feet of lumber and the profits plaintiffs would have realized on their contract would have been forty cents a hundred feet, or a total of four thousand dollars. Plaintiffs further allege they performed all the terms of the contract on their part, but after they had removed their property from Clark to Howell county in order to carry out their undertaking, defendant refused to allow them to go on his land, haul the logs or saw the timber as agreed, and refused in every way to carry out the contract. Damages were prayed in the sum of $4,500. The answer was a general denial. The case having been tried by a jury, a verdict was returned in favor of plaintiff for $1,000 damages, and after preliminary steps were taken, this appeal was prosecuted.

The main contention of defendant is that plaintiffs failed to prove the contract alleged. It is insisted that if the evidence had a tendency to prove any arrange-

ment between the parties, it was not a contract with
the three plaintiffs, A. B. Wayland, R. V. Wayland
and J. H. Fry, to haul defendant's logs for twenty cents
a hundred feet and to saw them into lumber for fifty
cents a hundred feet, but consisted, on the contrary, of
two separate and distinct contracts, one between de-
fendant and R. V. Wayland, by which the latter was to
haul the logs to the mill, and another contract with
A. B. Wayland and J. H. Fry, to saw the logs into lum-
ber. It might be inferred from the evidence the ar-
rangement was not jointly with the three plaintiffs for
both services, but the allegation of the petition of a sin-
gle contract for both hauling and sawing made between
the three plaintiffs and defendant is not without sup-
port. A. B. Wayland and J. H. Fry owned the saw mill
in Clark county and were operating it there. Some time
in June, 1906, A. B. Wayland was in Howell county
and had a conversation with defendant about bringing
the mill to Howell county, locating it on the latter's farm
and sawing his timber into lumber. According to said
Wayland's testimony it looks like a contract was made
between him and defendant in June, but this was not
the contract in suit. Wayland expected to hear from
Johnson by letter about the affair, but did not. In Oc-
tober R. V. Wayland went to Howell county to see his
father, and there met Johnson and asked him why he
had not written to A. B. Wayland regarding the pre-
vious talk or arrangement. Johnson said he had writ-
ten two or three letters but they had been returned and
he supposed he had addressed them incorrectly. R. V.
Wayland then asked Johnson if he still wanted the tim-
ber sawed, and a conversation followed regarding the
price of sawing and whether Johnson could furnish
enough logs to keep the mill running. Johnson said he
feared he could not as he had only one team. R. V.
Wayland, in testifying, used expressions like he made
a personal contract for the hauling; for instance, he pro-

posed if Johnson would give him the contract for haul-
ing the logs to the mill, to stand between Johnson
and the mill men. In the first conversation Wayland
offered to haul the logs to the mill for twenty-five cents
a hundred feet; Johnson to pay fifty cents for the saw-
ing. Wayland said he would have to see the timber
before he could fix a price for the work. The next day
Wayland went with several men (Davis, More and
Schull) to Johnson's place to look at the timber.
Wayland said it was not as good as he thought it was
and he could not cut it down and haul it for twenty-
five cents a hundred, but if Johnson would fell the tim-
ber he (Wayland) would haul it to the mill and saw
the timber for fifty cents a hundred feet, the slag and
sawdust to go to the mill men. According to R. V.
Wayland and, we may say, according to the testimony
of the bystanders, he and Johnson agreed then and
there on the price of fifty cents a hundred feet for the
sawing and twenty cents for the hauling, and Wayland
said he would go to town and write his brother to take
no more contracts in Clark county, but to clean the
yards there and come to Howell county at once. On
the same day Johnson drove over to Davis' house where
Wayland was, and Johnson then proposed to Wayland
to saw the timber on shares. Wayland declined, say-
ing if the lumber was sawed, Johnson would have to pay
cash and the contract was gone over again to prevent
any mistake. Wayland said he would buy teams and
harness for the hauling. In order that there might be
no misunderstanding about the contract, Johnson called
Davis, More and their wives, out to the buggy and they
witnessed the agreement. Johnson told these witnesses
he wanted them to understand the contract and, quot-
ing from Wayland's testimony as given in defendant's
brief, he said:

"He told them that he wanted them to understand
the contract. He says 'You men understand now, this

man is to saw the lumber for fifty cents a hundred and haul the logs to the mill for twenty cents a hundred.' Mr. Davis said: 'We understand that.' Mr. Johnson turned to me and said: 'Is that right, Mr. Wayland?' and I said, 'That is right.' I told him I wanted to sure know I was going to do it. He said: 'Go and prepare to do your work and come on down.'"

All the bystanders testified substantially the same way. The team and harness were bought by R. V. Wayland, but when he went to Johnson's farm to begin work, Johnson said he did not know that he would let him do any logging, as he (Johnson) had a good team of mules and knew where he could get another and good men to handle the teams. Wayland asked if he was not going to have his timber sawed and if he did not contract to do so. Johnson said, "yes," but he was not going to have the hauling done. The mill and engine were moved from Clark county but Johnson refused to permit anything to be done. On November 23d, prior to the moving, he wrote A. B. Wayland that he had been negotiating for a sale of his place and the prospective buyer said if he took it he would want a saw mill to work up the timber; that a number of other parties wanted lumber sawed for barns and dwellings, and he (Johnson) would look up the matter for Wayland as the latter's brother had mentioned. On December 17, 1906, Johnson wrote A. B. Wayland again, saying Schull had traded his farm for one in Kansas and a trade was near closing on his land, *so the timber might not now be worked into lumber on these two places.* The witnesses who were called to hear the contract swore they understood Johnson agreed with R. V. Wayland to pay twenty cents a hundred for the hauling of the logs and fifty cents per hundred for the sawing. A witness by the name of Kimberlin testified Johnson told him in October or November he had made a contract with some parties for a saw mill and thought

he could make more money out of the lumber than by selling the land; that a mill was coming from north Missouri to cut the timber. Another witness (Halstead) swore the same. The evidence tends to prove not only the making of a contract of definite character, but performance on the part of plaintiffs in good faith, as far as defendant would permit, and that the latter refused to carry out his agreement after plaintiffs had prepared to do the work. A great deal of testimony was introduced regarding the value of such work, the usual price for it, the quantity of timber on defendant's land and what profits might have been realized if the contract had been executed. Suffice to say as to this evidence, it amply supports the amount of damages awarded by the jury. Johnson himself did not take the stand to deny the agreement, or state it in a form different from the version given by R. V. Wayland. The testimony of R. V. Wayland and other witnesses certainly tends to prove the contract between Wayland and Johnson was for both services (to-wit, the hauling and the sawing) to be performed by all three parties, so that all three were bound to answer for the entire work to the defendant as promisee. There seems to have been an understanding or arrangement among the three plaintiffs that R. V. Wayland was to do the hauling and A. B. Wayland and Fry the sawing, and defendant may have so understood the arrangement. Granting this was true, the contract as a whole was none the less binding on the three plaintiffs as promisors and the case is like Clark v. Cable et al., 21 Mo. 223. In said case it appeared the defendant Cable had sold the plaintiff Clark and the defendant Bofinger, a thirteen-sixteenths interest in a steamboat for $26,000. The agreement of sale provided that Clark should take a nine-sixteenths interest for which he was to pay one-third cash and give notes secured by a mortgage on the boat, and Bofinger was to do likewise for a four-sixteenths interest. Bof-

inger having repudiated the purchase, Clark tendered performance for the nine-sixteenths interest he was to get and also the part Bofinger was to get. Cable refused to transfer either or both interests, and Bofinger refusing to join with Clark as a plaintiff, he was made defendant. On these facts it was held the contract of purchase was a joint one as between Clark and Bofinger on one side and Cable on the other, even though the two buyers had an arrangement between themselves, and sanctioned by the seller as to their respective shares in the purchase. It was further held the defect of parties having been properly raised by demurrer, that one of the promisees could not sue alone on the agreement. In the present case Johnson did not testify nor any one else, that two distinct contracts were made. Such an arrangement would have confined Johnson's remedy for failure to perform the hauling to an action against R. V. Wayland, and his remedy for a failure to saw to an action against the other plaintiffs. The evidence would hardly justify this conclusion and surely does not compel it. But the court left the issue to the jury in a definite instruction requested by defendant. It reads as follows:

"You are instructed that if you find that Johnson agreed to pay twenty cents a hundred for hauling his timber to the mill and to pay fifty cents for sawing the same into lumber, still, unless there was a binding agreement whereby each of said parties, R. V. Wayland, A. B. Wayland and J. H. Fry, were jointly and separately bound to carry out all parts of said agreement, then said agreement would not be binding on Johnson. That is to say, unless A. B. Wayland and J. H. Fry were bound to do the hauling in the event R. V. Wayland failed to do so, and unless R. V. Wayland was also bound to do the sawing if A. B. Wayland and J. H. Fry failed to do so. In other words, unless each of said parties R. V. Wayland, A. B. Way-

land and J. H. Fry, were bound to carry out the entire agreement in the event the others failed or refused, then said agreement was not binding on Johnson because it is a rule of law that unless all parties to such agreement are bound, none are bound."

Inasmuch as the evidence warranted the submission of the issue, the verdict of the jury in favor of plaintiff is conclusive that the contract for both the hauling and the sawing was joint and made with the three plaintiffs.

It is further contended in behalf of defendant that the conversation between R. V. Wayland and Johnson did not result in the creation of a contract which the parties expected to be carried out, but in an understanding that said Wayland should write his brother and Fry and the matter was to stand open until they were heard from. This contention is refuted by the testimony of all the witnesses; but it was submitted to the jury in an instruction drawn and requested by defendant's counsel; improperly submitted, we think, but determined against defendant. Said instruction is as follows:

"Although you may find and believe from the evidence that both of the Waylands and Johnson at divers times discussed the hauling and sawing of Johnson's timber, still, if you find that the final agreement was expressed in Wayland's saying to Johnson, 'If you will give fifty cents a hundred for sawing the lumber and twenty cents a hundred for hauling it to the mill, I will write my brother and tell him not to contract for any more work, and as soon as we get the yard sawed out we will ship the mill down here,' to which Johnson replied: 'all right' at Johnson's house or was expressed in Johnson's saying to Wayland at Davis's home: 'Now you will haul the logs for twenty cents a hundred and saw the logs for fifty cents a hundred,' then this would

not constitute a binding contract between all the parties."

It is contended the contract as proved was left too ambiguous to sustain an award of damages, in that it was not shown what size trees were to be sawed or over what acreage or what scale of measurement was to be used in determining the amount of plaintiffs' compensation, viz.: whether the sale was to be based on the gross quantity of feet in the logs or on the lumber cut from them. The evidence is quite clear that Johnson hired plaintiffs to saw such of his trees on about seven hundred acres of land, as were large enough to make lumber, pointing out specimens of what he wished sawed. He talked of having the remaining timber cut into stove wood. The evidence has no tendency to show confusion or uncertainty as to the scale of measurement. The parties testified it was seventy cents a thousand feet for *lumber* and this scale the court adopted in an instruction granted at defendant's request. The contract was proved with sufficient certainty to support an action for damages for the breach.

This case was carefully tried on very full instructions, mostly given at the request of defendant's counsel, and which carefully advised the jury as to their defenses. We find no reversible error in the record and as the judgment is just, it will be affirmed. It is so ordered. All concur.